UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | CASE NO. 17-44665-ess |
| VAN DOUG WALKER, | CHAPTER 11 |
| Debtor-in-Possession. | |
| MIRBOURNE NPN 2 LLC, | |
| Plaintiff, | ADV. PRO. NO. 18-01070-ess |
| v. | |
| VAN DOUGLAS WALKER, *et als.*, | |
| Defendants. | |

**MEMORANDUM OF LAW OF MIRBOURNE NPN 2 LLC (i) IN FURTHER
SUPPORT OF MOTION FOR ABSTENTION AND REMAND AND (ii) IN
OPPOSITION TO DEBTOR'S MOTION TO FURTHER EXTEND HIS
EXCLUSIVE PERIOD AND MOTION OF DAHIYA LAW OFFICES, LLC,
<u>TO WITHDRAW AS COUNSEL FOR THE DEBTOR</u>
(Related Docket Nos.: 4 (in Adv. Pro. No. 18-01070), 73, and 101)**

TO THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

Mirbourne NPN 2 LLC ("<u>Mirbourne</u>"), by and through its attorneys, Law Offices of

Kenneth L. Baum LLC, by way of Memorandum of Law (i) in further support of the *Motion of*

*Mirbourne NPN 2 LLC for Abstention and Remand Pursuant to 28 U.S.C. §§ 1334(c)(1) and (2)*

*and 1452(b), and Fed. R. Bankr. P. 5011(b) and 9027(d)* [Dkt. No. in Adv. Pro. No. 18-01070] (the "Abstention Motion") and (ii) in opposition to the *Motion to Further Extend Debtor's Exclusive Period* [Dkt. No. 73] (the "Second Exclusivity Motion") and the motion of Dahiya Law Offices, LLC ("Dahiya"), for leave to withdraw as counsel for the Debtor (the "Withdrawal Motion") respectfully states:[1]

## The Court Should Grant the Abstention Motion.

1. The Debtor's opposition to the Abstention Motion, which is asserted in separate pleadings filed by Dahiya and the Debtor himself,[2] completely ignores Mirbourne's argument that mandatory and discretionary abstention and remand of the State Court Action are warranted pursuant to 28 U.S.C. §§ 1334(c)(1) and (2) and 1452(b). In fact, neither Dahiya nor the Debtor address or even attempt to distinguish the statutory and case law authority cited in the Abstention Motion, relying instead on misplaced and irrelevant arguments related to the Court's jurisdiction over the State Court Action.

2. Specifically, Dahiya argues that, upon the filing of the Notice of Removal, the Court has original subject-matter jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1334(b). While the within adversary proceeding may conceivably be "related to" the Debtor's Chapter 11 case, it is certainly not a "core proceeding," nor does it arise under the Bankruptcy Code. *See Aetna Life Insurance Co. v. Danbury Square Associates, Limited Partnership (In re Danbury Square Associates, Limited Partnership)*, 150 B.R. 544, 547 (Bankr. S.D.N.Y. 1993)

---

[1] Unless otherwise noted, the capitalized terms herein shall have the definitions ascribed to them in the Abstention Motion.

[2] Consistent with the procedural gymnastics employed by the Debtor in both the State Court Action and the within Chapter 11 proceeding, the Debtor filed the Notice of Removal *pro se* on June 12, 2018, despite the fact that Dahiya has been his counsel of record since May 22, 2018.

("A foreclosure action does not invoke any provision of title 11 and does not arise in a case under title 11 because a foreclosure action is based on rights created by state law, but may be related to a bankruptcy case."). In any event, the fact that the Court may have "related to" jurisdiction over the within adversary proceeding does not mean, *ipso facto*, that retention of jurisdiction is appropriate, where grounds for both mandatory and discretionary abstention exist pursuant to 28 U.S.C. §§ 1334(c)(1) and (2) and 1452(b). Indeed, the existence of an action that is merely related to, but does not arise under, a case under the Bankruptcy Code is a key factor in determining a motion for abstention. *See International Tobacco Partners, Ltd. v. State of Ohio, et al. (In re International Tobacco Partners, Ltd.)*, 462 B.R. 378, 390 (Bankr. E.D.N.Y. 2011).

3. Dahiya also argues that 28 U.S.C. § 1334(e) and Section 541 of the Bankruptcy Code deprive any court other than the Bankruptcy Court from adjudicating a creditor's rights in a debtor's property unless that property is lawfully transferred out of the estate. [Dkt. No. 10 in Adv. Pro. No. 18-01070 at p. 3.] The effect of Section 1334(e)(1), which gives the district court – and, by referral, the bankruptcy court – exclusive jurisdiction of all of the debtor's property as of the commencement of the case, is to render the automatic stay effective as to, and prevent any party from exercising its rights in, any such property, without seeking relief from the automatic stay. *LaMonica v. North of England Protecting and Indemnity Ass'n. Ltd. (In re Probulk Inc.)*, 407 B.R. 56, 61-2 (Bankr. S.D.N.Y. 2009); *see also Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 908 (9th Cir. BAP 1999) ("The automatic stay enjoins infringement of that exclusive jurisdiction over property and prohibits various acts against the debtor.")

4. Here, the Court granted Mirbourne relief from the automatic stay to pursue its rights under applicable law with respect to the Property, thereby conferring concurrent jurisdiction on the Supreme Court of New York. Accordingly, Section 1334(e)(1) does not prevent a non-bankruptcy court from adjudicating a creditor's rights in property of a debtor's

estate, but rather, requires a creditor to seek relief from the automatic stay. Taken to its logical extension, Dahiya's argument would preclude *any* creditor from *ever* obtaining relief from the automatic stay to pursue its rights against a debtor's property in a non-bankruptcy court. Neither the statute nor the case law stand for such a tortured interpretation of Section 1334(e)(1). Accordingly, the Court should reject Dahiya's arguments.[3]

5. In addition, the Debtor argues, without any support, that he has an unassailable right to have his interest in the Property adjudicated in Bankruptcy Court, notwithstanding that the Court previously granted Mirbourne relief from the automatic stay to pursue its rights with respect to the Property. Moreover, the Debtor's tortured claim that Mirbourne is not a *bona fide* creditor was previously rejected and waived in the State Court Action and, more importantly, is of no moment to this Court in determining the Abstention Motion. Accordingly, because abstention and remand of the State Court Action to the Supreme Court of New York, consistent with the Stay Relief Order, is clearly warranted, the Court should grant the Abstention Motion.

**The Court Should Deny the Second Exclusivity Motion.**

6. Despite being granted an extension of his exclusive periods almost four (4) months ago [Dkt. No. 62], and despite the fact that his Chapter 11 case has been pending for more than ten (10) months, the Debtor has taken no demonstrable steps whatsoever toward

---

[3] The balance of Dahiya's objection to the Abstention Motion consists of an argument that the Debtor was somehow compelled to transfer property valued at $1.5 million for only $800,000. [Dkt. No. 10 in Adv. Pro. No. 18-01070 at p. 4.] It is undisputed that: (i) the Debtor willingly agreed to a framework for the sale of the Property pursuant to the March 22, 2016 Consent Order, which he eventually breached; (ii) the Debtor's own Schedule A values the Property at only $1.3 million [Dkt. No. 1 at Sched. A.); and (iii) the March 22, 2016 Consent Order provides, *inter alia*, that, in the event Mirbourne acquires title to the Property (which it eventually did, pursuant to the October 6, 2016 Order) and sells it, after payment of Mirbourne's Note and Mortgage, any other liens on the Property, and all reasonable closing costs, any remaining sale proceeds are to be remitted to the Debtor's attorney's trust account. Therefore, because the Debtor would theoretically receive a dollar-for-dollar satisfaction of his debts through a sale of the Property, any argument that the Property was fraudulently transferred is baseless and, more importantly, completely irrelevant to the determination of the Abstention Motion.

4

proposing a plan of reorganization. Instead, the Debtor has utilized the protections afforded to him under the Bankruptcy Code to continually obstruct and delay Mirbourne from exercising its valid rights against the Property in the State Court Action. Under these circumstances, a further extension of the Debtor's exclusive periods is not warranted.

7. Pursuant to Section 1121(d) of the Bankruptcy Code, "[o]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. §1121(d). It is well-established that, "[t]he determination of cause under section 11121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity." *In re Borders Group, Inc.*, 460 B.R. 818, 821-2 (Bankr. S.D.N.Y. 2011) ("*Borders*"). Nevertheless, "[a] court's decision to extend a debtor's exclusive periods is a serious matter; extensions are not granted routinely or cavalierly." *Id.* at 821. *See also In re Southwest Oil Company of Jourdanton, Inc.*, 84 B.R. 448, 450 (Bankr. W.D. Tex. 1987) (noting that, "[a] court considering a motion to extend the 120-day period … should not routinely grant an extension," and, "[c]ourts considering the question of whether to extend the exclusivity period have not favored extensions of the 120-day period, a position supported by the legislative history.) At the core of the Court's analysis is the principle that, "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostage of Chapter 11 debtors." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987).

8. As courts have held, "[t]he burden of proving cause to reduce or increase exclusivity is on the moving party…." *Borders*, 460 B.R. at 821 (citations omitted). Critically, "[f]or the moving party to meet its burden it must produce affirmative evidence to support a finding of cause." *Id.* (citing *In re Parker St. Florist & Garden Ctr., Inc.*, 31 B.R. 206, 207

5

(Bankr. D. Mass. 1983)). *See also In re Southwest Oil Company of Jourdanton, Inc.*, 84 B.R. at 451 (noting that a debtor's burden is not satisfied by merely stating a *prima facie* case for an extension; rather, a debtor's request must be supported by specific facts). Moreover, "mere recitations of allegations deemed by a debtor to constitute cause for an extension of the exclusive period [are] insufficient to allow such an extension." *In re Ravenna Industries, Inc.*, 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982) (stating that, "Section 1121(d) requires that an affirmative showing of cause, supported by evidence, be made by the party seeking the extension … of time.").

9. In determining whether cause exists to grant an extension of exclusivity, courts generally consider the following factors:

- (a) The size and complexity of the case;
- (b) The necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
- (c) The existence of good faith progress toward reorganization;
- (d) The fact the debtor is paying its bills as they become due;
- (e) Whether the debtor has demonstrated reasonable prospects for filing a viable plan;
- (f) Whether the debtor has made progress in negotiations with its creditors;
- (g) The amount of time which has elapsed in the case;
- (h) Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
- (i) Whether an unresolved contingency exists.

*Borders,* 460 B.R. at 822 *(*citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006)). *See also In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (same).

10. Here, the Second Exclusivity Motion is based solely on "mere recitations of allegations" by the Debtor's former counsel, without a sworn statement by the Debtor or any other "affirmative evidence" to support an extension. For this and the other reasons described below, none of the above factors weigh in favor of further extending the Debtor's exclusive period to file a Chapter 11 plan.

### (i) The Size and Complexity of the Case.

11. As courts have noted, "[i]t is clear from the legislative history that Congress intended an extension to be granted only in unusual circumstances, involving very large or complex cases." *In re Southwest Oil Company of Jourdanton, Inc.*, 84 B.R. at 452 (emphasis added). As the *Southwest Oil Company of Jourdanton* court explained, examples of cases sufficiently large and complex to justify an extension of the exclusivity period include: a debtor providing worldwide telecommunications services involving 100 separate utility companies, with the existence of major conflicts between management, owners, and labor (*In re United Press International, Inc.*, 60 B.R. 265, 269 (Bankr. D. D.C. 1986)); and a case involving approximately 100 creditors holding 225 claims against the estate (*In re Perkins*, 71 B.R. 294, 296 (W.D. Tenn. 1987)). Similarly, in *Borders*, where the debtors were granted a 120-day extension of their exclusive periods, the court noted that at the outset of the case, the debtors had more than 600 retail stores, more than $1.6 billion in assets, and over $2.6 billion in liabilities. *Borders*, 460 B.R. at 823.

12. Conversely, a case involving only 20 creditors and litigation in which an appeal from a large judgment was pending, where the debtor had not formulated or proposed a Chapter 11 plan as of the hearing on its motion to extend exclusivity, did not justify an extension of the exclusivity period. *In the Matter of American Federation of Television and Radio Artists*, 30 B.R. 772 (Bankr. S.D.N.Y. 1983). *See also In re GMG Capital Partners III, L.P.*, 503 B.R. 596,

7

601 (Bankr. S.D.N.Y. 2014) (where the court denied debtor's motion to extend exclusive periods on the basis that, *inter alia*, "the cases are small and uncomplicated," noting that the debtor had no active operations, no employees, no unexpired leases or executory contracts, and that its sole business was managing its portfolio of stock in three companies).

13. The Debtor's case does not present any complex issues or unique facts to warrant any extension of his exclusive period to file a Chapter 11 plan, nor has it involved numerous and complex proceedings, intercreditor disputes, or other issues that could otherwise forestall prompt resolution of this case. See *In re Mclean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (holding that complex legal and factual issues arising from consolidation of four cases required considerable further study before plan of reorganization could be proposed, justifying continuation of exclusivity); *In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 (S.D.N.Y. 1983) (holding that the "sheer mass, weight, volume and complication of the [case] undoubtedly justified a shakedown"). The Debtor has three (3) primary assets – the Property and two (2) other properties in Brooklyn, New York – which he apparently uses for rental income through Airbnb. He has no employees, or any unexpired leases or executory contracts to assume or reject (*see* Petition at Schedule G, p. 1). Moreover, as the docket reflects, there have been no adversary proceedings (other than the adversary proceeding initiated by the Debtor by filing the Notice of Removal) or complex issues to which the Debtor has had to devote his attention.

14. Further, the creditor body in this case is not large or complex. The bar date for filing claims against the Debtor's estate has passed, and only thirteen (13) creditors, including Mirbourne, filed proofs of claims. Accordingly, there is nothing to suggest that the size and complexity of this case warrant an extension of the Debtor's exclusive periods.

### (ii) The Necessity of Sufficient Time to Permit the Debtor to Negotiate a Plan of Reorganization and Prepare Adequate Information to Allow a Creditor to Determine Whether to Accept Such Plan.

15. As noted above, the Debtor's Chapter 11 case has been uneventful and uncomplicated. Indeed, the Debtor has not moved for the type of relief typically sought by most Chapter 11 debtors, such as Court approval to use cash collateral or obtain debtor-in-possession financing, nor has he had to litigate any adversary proceedings.

16. Notably, other than an unsworn, self-serving statement by his counsel that the Debtor, "has been … engaging in negotiations to determine the best way to reorganize his assets" (Second Exclusivity Motion at pp. 2-3, ¶ 6), the Second Exclusivity Motion is completely devoid of any information regarding the Debtor's efforts, if any, to negotiate the terms of a plan with his creditors. Granting the Debtor yet another extension of his exclusivity periods will only delay the progress of this case to the detriment of creditors, who, as discussed below, are already at risk as a result of the Debtor's failure to disclose the state of his financial affairs. Accordingly, the Debtor does not satisfy this requirement for relief under Section 1121(d) of the Bankruptcy Code.

### (iii) The Fact the Debtor is Paying His Bills as They Become Due.

17. The Debtor does not even address this element in the Second Exclusivity Motion, and his silence is telling: the Debtor has not filed a Monthly Operating Report since May 9, 2018 [Dkt. No. 72]. Therefore, the Debtor provides no information regarding his ability to pay his debts as they come due.

18. The deterioration of a debtor's financial condition during a Chapter 11 case and the corresponding potential harm to creditors must be considered when determining whether an extension of the exclusivity period is warranted. *See In re Southwest Oil Company of Jourdanton*, 84 B.R. at 453 ("Even were these debtors to have sustained their burden under

§ 1121(d), the Court must also balance potential harm to creditors when determining whether to grant an extension."). The Debtor's failure to file Monthly Operating Reports or provide any information regarding the state of his finances for more than two (2) months speaks volumes and weighs against any finding that the Debtor is paying his bills as they become due.

   **(iv)** **The Existence of Good Faith Progress Towards a Reorganization and Whether the Debtor Has Demonstrated Reasonable Prospects for Filing a Viable Plan.**

  19. A primary consideration in considering a debtor's request to extend its exclusive periods is whether the debtor has demonstrated a reasonable prospect for filing a confirmable plan of reorganization. *See In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (denying debtor's request to extend exclusivity where debtor was unable to propose a confirmable plan and further delay would not enhance its prospects); *In re Grossinger's Assocs.*, 116 B.R. 34, 35-36 (Bankr. S.D.N.Y. 1990) (terminating exclusivity where debtor proposed a manifestly unconfirmable plan); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 69 (Bankr. N.D.N.Y. 2005) (refusing to extend exclusivity upon the court's finding that, "further delay in the confirmation process resulting from extension of debtor's exclusivity period could well damage the prospects of realizing the intrinsic economic value of debtor's business"). In fact, "[i]n virtually every case where an extension has been granted, the debtor has shown substantial progress has been made in formulating a plan during the first 120 days." *In re Southwest Oil Company of Jourdanton*, 84 B.R. at 451.

  20. Potential unsubstantiated and unrealistic reorganization strategies should not delay a termination of exclusivity as a debtor must demonstrate "a reasonable possibility of a successful reorganization within a reasonable time." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d at 370-71; *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (9th Cir. BAP 1994). To meet this heavy burden, a debtor must prove that the proposed plan is not patently

unconfirmable and that, in the near future, it has a realistic chance of being confirmed. *In re Sun Valley Newspapers, Inc.*, 171 B.R. at 75; *In re 266 Washington Assocs.*, 141 B.R. 275, 281 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Ashgrove Apts. of DeKalb County, Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990); *In re Marston Enter., Inc.*, 13 B.R. 514, 515 (Bankr. E.D.N.Y. 1981).

21. Here, the Debtor has offered no evidence to suggest that he has a "reasonable possibility" of confirming a Chapter 11 plan within a "reasonable time." In fact, the Second Exclusivity Motion is completely barren of <u>any</u> statement regarding the possible terms of a plan. Accordingly, the Debtor cannot satisfy this standard.

### (v) **Whether the Debtor Has Made Progress in Negotiations with its Creditors.**

22. Other than an unsworn statement by the Debtor's counsel in the Exclusivity Motion that, "the Debtor has been … engaging in negotiations to determine the best way to reorganize his assets" (Second Exclusivity Motion at pp. 2-3, ¶ 6), there is nothing in the record to reflect that the Debtor has even had any discussions with creditors regarding the terms of a Chapter 11 plan. Moreover, as the Court is aware, Mirbourne's negotiations with the Debtor proved unfruitful, leading the Court to terminate loss mitigation. Under these circumstances, the Debtor cannot satisfy the requirement that he has made progress in his negotiations with creditors.

### (vi) **The Amount of Time Which Has Elapsed in the Case.**

23. As discussed above, the Debtor's Chapter 11 case is a very simple one. It involves only one (1) debtor, with only three (3) assets of any meaningful value, a small creditor body, and no employees or unexpired leases or executory contracts. There are no cash collateral or debtor-in-possession financing issues, nor have any adversary proceedings been filed (other

11

than the adversary proceeding initiated by the Debtor by filing the Notice of Removal of the State Court Action). Under these circumstances, the ten (10) months that this case has been pending are more than sufficient for the Debtor to have formulated a Chapter 11 plan.

### (vii) Whether the Debtor is Seeking an Extension of Exclusivity in Order to Pressure Creditors to Submit to the Debtor's Reorganization Demands.

24. The Debtor acknowledges that he filed the Second Exclusivity Motion, "to prevent his creditors from proposing and confirming a liquidation plan that removes any possibility of a successful reorganization." (Second Exclusivity Motion at p. 3, ¶ 7.) (emphasis added). This telling statement should leave no doubt that the Second Exclusivity Motion was filed as a litigation tactic to hold creditors, especially Mirbourne, hostage to the Debtor's secretive management of his properties and finances in Chapter 11 indefinitely. Accordingly, the Debtor cannot satisfy this element for an extension of his exclusive periods. See *In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 602 (Bankr. S.D.N.Y. 2014) (holding that the debtor used its exclusivity motion as a "tactical weapon" in its two-party dispute with its principal creditors, and noting that the motion was "designed to induce [the principal creditors] to accept [the debtor's] view of the future, or at a minimum, prevent [the principal creditors] from filing a plan that would jeopardize the potential upside to [the debtor's] other stakeholders, including its members and limited partners….").

### (viii) Whether an Unresolved Contingency Exists.

25. As courts have held, "an unresolved contingency refers to some event external to the case that must occur in order for the case to succeed." *In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 603 (Bankr. S.D.N.Y. 2014) (citing *In re Dow Corning Corp.*, 208 B.R. 661, 666 (Bankr. E.D. Mich. 1997)). Here, there is no external event upon which the success – however that term may be defined – of the Debtor's Chapter 11 case will rise or fall, nor has the Debtor

identified one. The only potential "contingency" addressed in the Second Exclusivity Motion is the then-pending loss mitigation with Mirbourne. As the Court is aware, loss mitigation has been terminated. Accordingly, the Exclusivity Motion should be denied.

### The Court Should Only Conditionally Grant the Withdrawal Motion.

26. The timing of the Withdrawal Motion, which was filed only six (6) days after entry of the Order approving Dahiya's retention as counsel to the Debtor, speaks volumes as to the circuslike atmosphere surrounding the conduct of this Chapter 11 proceeding and calls into question whether the Withdrawal Motion is simply another dilatory tactic employed by the Debtor to forestall the exercise of Mirbourne's rights in the State Court Action with respect to the Property.

27. Mirbourne does not object to Dahiya's withdrawal as counsel to the Debtor, but notes that any withdrawal should be conditioned on the Debtor obtaining no further delays or adjournments regarding any pending matter as a result of Dahiya's withdrawal, including, *inter alia*, the Abstention Motion and the Second Exclusivity Motion.

WHEREFORE, Mirbourne respectfully requests that the Court (i) grant the Abstention Motion, (ii) deny the Second Exclusivity Motion, (iii) condition the Withdrawal Motion on the Debtor obtaining no further delays or adjournments regarding any pending matter, and (iv) grant such other relief as the Court deems just and proper.

Dated: Hackensack, New Jersey
July 12, 2018

                                        LAW OFFICES OF KENNETH L. BAUM LLC
                                        Attorneys for Mirbourne NPN 2 LLC

                                        By: */s/ Kenneth L. Baum*
                                              Kenneth L. Baum
                                              167 Main Street
                                              Hackensack, New Jersey 07601
                                              (201) 853-3030
                                              (201) 584-0297 Facsimile
                                              kbaum@kenbaumdebtsolutions.com